**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DEBORAH ANN CARBONI,
Plaintiff-Appellant,

v.

J. BLAIR MELDRUM, D.V.M, Ph.D.;

No. 96-1236

D. PHILLIP SPONENBERG, D.V.M.,
Ph.D.; DON WALDRON, D.V.M.;
RENE ARMSTRONG,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-95-539-R)

Argued: October 29, 1996

Decided: December 6, 1996

Before HALL and LUTTIG, Circuit Judges, and BULLOCK,
Chief United States District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge Hall wrote a con-
curring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Marc L. Fleischaker, Jeanine Marie Worden, ARENT,
FOX, KINTNER, PLOTKIN & KAHN, Washington, D.C., for

Appellant. Kay Heidbreder, Associate General Counsel/Special Assistant Attorney General, VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, Blacksburg, Virginia, for Appellees. **ON BRIEF:** Barbara S. Wahl, ARENT, FOX, KINTNER, PLOTKIN & KAHN, Washington, D.C., for Appellant. Jerry D. Cain, General Counsel/Special Assistant Attorney General, VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, Blacksburg, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Appellant-plaintiff Deborah Ann Carboni appeals from the summary judgment dismissal of her suit under 42 U.S.C.§ 1983 against appellee-defendants Dr. J. Blair Meldrum, Dr. Don Waldron, Rene Armstrong, and Dr. Philip Sponenberg. Finding no error in the district court's opinion, we affirm.

Carboni, a graduate student at the Virginia-Maryland Regional College of Veterinary Medicine at the Virginia Polytechnic Institute ("VPI") from 1991 to 1995, was dismissed from VPI in 1995 subsequent to the school's determination that she had cheated on an exam. The defendants were all state officials and employees of VPI at the time of Carboni's dismissal. The circumstances surrounding this dismissal, summarized in the district court's opinion, J.A. at 681-87, form the basis of Carboni's lawsuit against the defendants.

Throughout her tenure at VPI, Carboni experienced significant academic difficulty. In 1995, she received a failing grade in a Urology course taught by Waldron. Pursuant to school policy, Waldron, "at [his] discretion," J.A. at 94, permitted Carboni to take a "single, special, course comprehensive" make-up examination, J.A. at 94. The make-up examination took place on April 13, 1995.

2

During the exam, Waldron began to suspect that Carboni was cheating. His suspicion was based on information provided to him by Dreama Webb, his secretary, who told him that, during the exam, she had seen someone in one of the stalls in the women's bathroom with papers arrayed around her feet, and that, shortly thereafter, she heard papers rustling under Carboni's clothes as she observed Carboni emerge from the bathroom.

Waldron reported his suspicions to Meldrum, the Associate Dean of Academic Affairs at VPI. Meldrum confronted Carboni about the suspected cheating, and Carboni denied that she had cheated. Meldrum then directed Webb and Rene Armstrong, Meldrum's administrative assistant, both of whom are women, to take Carboni to the women's bathroom to search her.

In the women's bathroom, Armstrong stated to Carboni, "I will need you to remove your top," J.A. at 309-10, in response to which Carboni lifted her shirt over her head. Armstrong looked around Carboni's bra and chest and "touched around [her] bra." J.A. at 310. Without being requested to do so, Carboni then removed her boots. J.A. at 310. Armstrong then stated that she needed to check the inside of Carboni's pants, J.A. at 311, 555, and so Carboni pulled her pants down to her knees, J.A. at 311. After Carboni pulled her pants back up, Armstrong told Carboni to turn her pockets inside out, and then did a pat-down frisk of Carboni, "feel[ing] [Carboni's] legs and feel-[ing] around her buttocks and the front of[her] to make sure [that she] had no notes in [her] pockets." J.A. at 555. This search disclosed no evidence of cheating.

In the meantime, Dr. Meldrum had discovered some notes that Carboni had placed inside a credenza in the exam room, and, afterwards, he learned from Carboni that she had placed other notes in a sanitary napkin disposal in the bathroom stall. Carboni, however, denied looking at any of these notes during the exam.

Carboni was not permitted to finish the exam, and was subsequently brought before the VPI Honor Board. The Honor Board found Carboni guilty of cheating, and consequently placed her on a six-week academic suspension. Waldron, however, refused to allow Carboni to take another Urology make-up examination, which caused her

3

original failing grade to be re-instated. As a result, Carboni was dismissed from VPI not for cheating, but for receiving an "F" in the Urology class.

Carboni then filed this lawsuit against the defendants. She alleged, first, that the defendants violated her Fourth Amendment right to be free from unreasonable searches and seizures when they searched her in the women's bathroom, and second, that the defendants violated her Fourteenth Amendment Due Process rights when they unilaterally increased the punishment imposed by the Honor Board from a six-week academic suspension to dismissal from VPI.

The district court granted summary judgment in favor of the defendants. The district court first held that the defendants were entitled to qualified immunity on Carboni's Fourth Amendment claim because they did not violate clearly established law. According to the district court, the defendants were entitled to qualified immunity because "Dr. Waldron and Dean Meldrum had every justified reason to suspect that [Carboni] was cheating and the court cannot say that [they] were unreasonable in believing that they could authorize the search of Ms. Carboni's person under the peculiar factual circumstances this case presents," J.A. at 693, and, additionally, because "they were reasonably led to believe that [Carboni's] ready acquiescence to the search indicated her implied consent," J.A. at 696. The district court then held that the defendants did not violate Carboni's Due Process rights because school policies gave Waldron complete discretion, independent of the Honor Board, to refuse to allow Carboni to take a make-up examination.

Having carefully reviewed the record, briefs, and contentions of the parties at oral argument, we can find no error in the district court opinion. We therefore affirm the decision of the district court on the opinion of that court.

AFFIRMED

HALL, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly granted summary judgment to Armstrong and Dr. Meldrum on Ms. Carboni's

Fourth Amendment claim. Although the evidence reveals the defendants' actions to have bordered on the outrageous, I am compelled to conclude that both Armstrong and Meldrum could have reasonably believed that Carboni had consented to the search.

I respectfully dissent, however, from the majority's affirmance of the district court's grant of summary judgment to Drs. Meldrum and Waldron on the due process claim. As the district court acknowledged, Carboni has a colorable claim of a liberty or property interest in obtaining a veterinary degree. See Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 222-23 (1985) (assuming, without deciding, that the pursuit of a medical career was a constitutionally protected interest).

The evidence in this case, viewed in the light most favorable to Carboni, would permit a reasonable jury to conclude that Meldrum and Waldron exerted improper influence and control over the veterinary school's disciplinary process. The defendants' actions may well have rendered impotent the very mechanism emplaced by the school to ensure that Carboni's rights were vindicated. If, as a result, Carboni received, in effect, "no" process, we can hardly deem her to have been accorded "due" process. I would remand this aspect of the due process claim for trial.*

_____

*I concur in the majority's conclusion that Dr. Sponenberg was entitled to summary judgment on Carboni's claim that the Student and Faculty Board hearings themselves violated her due process rights.

5