**Richard W. SMITH, Plaintiff,**

v.

**The RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, et al., Defendants.**

**Civil Action No. 3:99CV00064.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Oct. 3, 2000.

Dane H. Butswinkas, Heidi K. Hubbard, Paul T. Hourihan, Williams & Connolly, Washington, DC, Francis McQuaid Lawrence, Rhonda Quagliana, Charlottesville, VA, for Plaintiff.

Richard C. Kast, Earl C. Dudley, Jr., Susan M. Davis, Associate General Counsel and Special Asst. Atty. Gen., University of Virginia Office of General Counsel, Charlottesville, VA, for Defendants.

## MEMORANDUM OPINION

MOON, District Judge.

Plaintiff Richard Smith, a student at the University of Virginia ("University"), brought this action against the Rector and Visitors of the University of Virginia, University President John T. Casteen, III, University Vice–President William W. Harmon, individual members of the University's Board of Visitors ("BOV"),[1] and individual members of the University's Judiciary Committee ("UJC"),[2] alleging violations of his due process rights under 42 U.S.C. § 1983. On December 22, 1999, this Court ruled on defendants' motion to dismiss and/or for summary judgment by granting summary judgment on Counts Three, Four and Seven in their entirety, and granting summary judgment on Count Five to the extent that Count purported to state a claim concerning the events surrounding the May 1999 hearing panel. *See Smith v. The Rector and Visitors of the Univ. of Va.,* 78 F.Supp.2d 533 (W.D.Va. 1999).

Pursuant to this Court's December 22, 1999 ruling, the only claims remaining before this Court are plaintiff's allegations that he was: (1) denied due process by the members of the November UJC hearing panel and Harmon by their actions leading up to and culminating in the November hearing (Count One); (2) denied due process by Casteen, Harmon, and members of the BOV by their failure to instruct, train, supervise, and control the November UJC hearing panel in the performance of their duties (Count Two); (3) denied due process by Casteen and individual members of the BOV by their failure to instruct, train, supervise, and control Harmon (Count Five); and (4) damaged by individual members of the UJC hearing panel who conspired to deprive him of his civil rights (Count Six).

Defendants have now filed a supplemental motion for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I. FACTS

This Court's earlier Opinion summarized the essential factual background of plaintiff's claims in detail. *See id.* at 534–536. In light of its earlier ruling, the Court now focuses its attention solely upon the facts surrounding the November 21, 1998 UJC hearing panel.

In the early morning hours of November 21, 1997, Second–Year University student Richard Smith went for a drive with four of his fraternity brothers. Alexander Kory, another University student who was on foot, encountered Smith and his friends and had what can euphemistically be described as "verbal interactions" with one

1. The named members of the Board of Visitors are John P. Ackerly, III, Charles M. Caravati, Jr., Champ Clark, William G. Crutchfield, Jr., William H. Goodwin, Jr., T. Keister Greer, Elsie Goodwyn Holland, Timothy B. Robertson, Terence P. Ross, Albert H. Small, Elizabeth A. Twohy, Henry L. Valentine, II, Walter F. Walker, Benjamin P.A. Warthen, James C. Wheat, III, and Joseph E. Wolfe.

2. The named UJC members are John Hevner, Matthew O'Malley, Steve Saunders, Mark Kringlen, Alton Powell Clark, Priya Kumar, and Emily Halayko.

or more of the car's occupants. Unfortunately, events escalated to the point where Bradley Kintz and Harrison Kerr Tigrett (two of Smith's friends) exited the car to confront Kory. Smith then exited the car and attempted to calm the situation by telling Kory to go home and Kintz and Tigrett to go back to the car. Kory then directed some profanity toward Smith and, in a burst of anger, Smith punched Kory in the face, causing him severe injuries to the face, jaw, and teeth.

Smith pled guilty to a misdemeanor charge of assault and battery, served 21 days in jail, participated in 400 hours of community service, and attended anger management counseling. Smith also paid all of Kory's medical expenses related to the assault.

Kory initiated student disciplinary charges against Smith, Kintz, Tigrett and a fourth participant pursuant to the procedures of the UJC. The UJC is a student-run disciplinary body charged with handling complaints about student violations of the University's Standards of Conduct. Because the fourth student was scheduled to graduate the following May, Vice President for Student Affairs, William Harmon, determined that he would not be subjected to a UJC trial and instead reprimanded him and required him to attend counseling.

A UJC hearing for Smith, Kintz and Tigrett was initially scheduled for February, 1998, but was postponed until after the disposition of criminal charges pending against them and was rescheduled for November 21, 1998. The day before the rescheduled hearing was to take place, Smith and his father met with Harmon to request its postponement. While there is a dispute as to what happened next, Smith alleges that Harmon agreed to postpone the hearing. Smith then asked his student defense representative to contact the UJC chairperson to inform her that the trial was postponed and left Charlottesville to return home to Memphis, Tennessee to watch his younger brother play in a football game.

Meanwhile, the UJC held its hearing on November 21 despite the absence of Smith, Kintz, and Tigrett, and the protests of Smith's representative. The UJC found the three guilty and ordered their expulsion from the University. On review, Harmon referred the UJC panel's decision to the University's Judicial Review Board ("JRB"), which is charged with hearing certain appeals of UJC decisions. Smith also directly appealed the decision to the JRB shortly thereafter. On February 11, 1999, the JRB set aside the UJC panel's decision and remanded the matter for a new hearing. Pursuant to the remand, the UJC named a new hearing panel and scheduled a new hearing for April 17, 1999. However, that hearing was canceled when the UJC chairperson recused herself. Subsequently, the UJC determined that it was unable to hear the case in a timely manner and referred it to Harmon, who then appointed a hearing panel consisting of student, faculty and administration representatives to hear the case. This panel convened a hearing on May 17, 1999, at which Smith appeared, witnesses were called, evidence was presented, and factual findings were made. The panel then recommended that Smith be suspended for two consecutive semesters that could include a summer session and perform pro-bono community service.

The panel forwarded its recommendations to President Casteen. Casteen reviewed the panel's report and recommendations as well as the entire transcript of the hearing testimony and affirmed the findings of guilt reached by the panel. However, he modified Smith's recommended sanctions by imposing a suspension for two full academic years plus community service and participation in an anger and alcohol abuse program. Casteen similarly increased the sanction imposed on Tigrett to suspension for one full academic year. Moreover, Casteen deferred final judgment on the issue pending an appeal of his decision to the JRB, but noted that he had "ultimate and non-delegable statutory responsibility"

over the case that he did not wish to waive. The JRB denied Smith's appeal on June 22, 1999.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir.1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994).

## III. ANALYSIS

*1. Count One—Whether the UJC or Harmon denied Plaintiff of Due Process*

In the context of student discipline, the due process clause requires "notice and an opportunity to be heard." *See Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150 (5th Cir.1961); *Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir.1988); *Carey v. Maine Sch. Admin. Dist. No. 17*, 754 F.Supp. 906, 918 (D.Me. 1990); *Reilly v. Daly*, 666 N.E.2d 439, 444 (Ind.Ct.App.1996). It is no longer open to question that any expulsion from a state university or college must comport with the Due Process Clause of the Fourteenth Amendment. *See Goss v. Lopez*, 419 U.S. 565, 576, n. 8, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

In analyzing a due process claim, a court must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty or property." *See Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Board of Regents v. Roth*, 408 U.S. 564, 569–572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If so, the court must then determine what process is due. *See id.*

Here, the Court will assume that Smith had a protected property interest in his continued enrollment at the University. *See Henson v. Honor Committee of the Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983); *Cobb v. The Rector and Visitors of the Univ. of Va.*, 69 F.Supp.2d 815, 826 (W.D.Va.1999); *Lewin v. Medical College of Hampton Roads*, 910 F.Supp. 1161, 1164 (E.D.Va.1996), *aff'd*, 120 F.3d 261 (4th Cir. 1997). It is also assumed that plaintiff possessed a liberty interest in his reputation. *See Goss*, 419 U.S. at 576, 95 S.Ct. 729.

Defendants contend that plaintiff was never denied of any property or liberty interest because he never believed he was actually expelled from the University. They first note that UJC procedures provide that all expulsion decisions are automatically subject to the review of the Vice President of Student Affairs. Second, defendants point out that on November 25, 1998, plaintiff's counsel Fran Lawrence established that plaintiff was not expelled and would remain enrolled at the University pending appeal, and that Lawrence so informed plaintiff's father via faxed letter that same day.

The question remains, however, not whether plaintiff was actually deprived of a property or liberty interest, but rather whether plaintiff reasonably believed that such a deprivation had occurred. *See Sundbye v. Ogunleye*, 3 F.Supp.2d 254, 264 (E.D.N.Y.1998). Plaintiff learned of the UJC panel's decision on November 22. So even if plaintiff became fully informed of his right to appellate review on November 25, that still leaves a four day window in which Smith may have fostered the objectively reasonable belief that the expulsion decision was effective immediately. This false belief may have been further com-

pounded by the fact that the UJC sent a letter to plaintiff on November 21, stating that the UJC had sanctioned him with "[e]xpulsion without any condition that will allow readmission." The letter makes no mention of Harmon's automatic review. In addition, upon his return from Memphis to the University, plaintiff has presented evidence that he was precluded from registering for classes and did not attend classes because he believed he was expelled.

Citing to *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), defendants contend that, even assuming plaintiff was precluded from registering and did not attend a few classes, such minor deprivations are not the types of "total exclusion from the educational process for more than a trivial period" that the Supreme Court has established as a trigger for a due process violation cognizable in federal court. *See id.* at 576, 95 S.Ct. 729. This selective quotation completely mischaracterizes the Court's holding in *Goss.* Such "total exclusion" is not required, rather "[t]he Court's view has been that as long as a property deprivation is not de minimis, its gravity is irrelevant to the question of whether account must be taken of the Due Process Clause." *Id.*

Neither the plaintiff's property interest in the educational benefits temporarily denied nor his liberty interest in his reputation, which is also implicated here, is so insubstantial that an expulsion decision may be constitutionally imposed by any procedure the University chooses. *See id.* It is uncontroverted that the sanction imposed by the UJC panel was expulsion, which clearly involves a deprivation of both liberty and property interests. There is disagreement, however, over the ramifications of the expulsion decision, given that it did not take immediate effect and was later set aside.

Smith has alleged that he was unable to register for classes shortly after the November UJC hearing. Defendants admit this is true, but claim the reason behind the registration block was an unpaid parking ticket. While the exact reason why plaintiff was precluded from registering for classes is disputed, this Court must make all factual inferences in favor of the non-moving and thus assume that the registration block was due to the expulsion decision. Smith also did not attend classes for a period of time after the UJC hearing because of his belief that he had been expelled.

■ This Court must determine whether the Due Process Clause is applicable to the period of, as described by the defendants, "momentary confusion." The Court chooses to treat the sanction as the equivalent of a three-day suspension.[3] This District, along with other courts, have held the Due Process Clause is applicable to three-day suspensions. *See Hillman v. Elliott,* 436 F.Supp. 812, 815 (W.D.Va. 1977); *Shanley v. Northeast Ind. School Dist., Bexar County Texas,* 462 F.2d 960, 967 n. 4 (5th Cir.1972); *Click v. Board of Police Comm'rs,* 609 F.Supp. 1199, 1204 (W.D.Mo.1985).

Having determined that the Due Process Clause applies, the Court now turns to the question of what process was due. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At the very minimum, students facing suspension or expulsion, and the consequent interference with protected property and liberty interests, must be given some kind of notice and afforded some kind of hearing. *See Goss,* 419 U.S. at 578, 95 S.Ct. 729. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914).

---

**3.** The three-day suspension figure is calculated based on the period of Monday, November 23 through Wednesday, November 25. While plaintiff has testified that he did not attend classes for "a good week" after the UJC decision, the record shows that plaintiff's counsel determined on November 25 that the expulsion decision had not yet taken effect, so this Court assumes that Smith was informed of this fact by his counsel and that he therefore was fully aware that he was free to attend classes on Thursday, November 26.

■ There is a factual dispute as to whether Harmon told Smith that the November UJC hearing would be postponed or, on a broader level, whether Smith knew or should have known of Harmon's (lack of) authority to postpone UJC hearings. While Harmon's actions are disputed, this Court must again make all factual inferences in favor of the non-moving party and thus assume that Harmon had told Smith that the November UJC hearing would be postponed. If that is the case, then Smith may not have had notice and an opportunity to be heard at the November UJC hearing. Thus, Smith has created genuine issues of material fact as to notice and opportunity to be heard, and, as a result, defendant's motion for summary judgment on the procedural due process claim must be denied.

Defendants reassert that any alleged violations of Smith's constitutional rights at the November UJC hearing are irrelevant since the panel's decision was set aside anyway and Smith suffered no harm. Defendants raised, and this Court rejected, the very same argument in their motion to dismiss and/or for summary judgment. For the same grounds articulated in this Court's earlier ruling, defendants' argument is again rejected. *See Smith,* 78 F.Supp.2d at 538.

■ Smith can recover for mental and emotional distress caused by any denial of procedural due process if he proves actual compensable injury. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Merritt v. Mackey,* 932 F.2d 1317, 1323 (9th Cir.1991) (damages awarded for emotional distress resulting from denial of opportunity to be heard, even though termination of employment upheld); *Laje v. R.E. Thomason Gen. Hosp.,* 665 F.2d 724, 728–29 (5th Cir.1982) (damages awarded for mental anguish and distress from deprivation of due process, even though dismissal from employment was justified). Distress is customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff. *See Carey,* 435 U.S. at 263–64,

98 S.Ct. 1042. "Although essentially subjective, genuine injury in this respect may be evidenced by one's own conduct and observed by others." *Id.* at 264, n. 20, 98 S.Ct. 1042. Plaintiff has presented sufficient evidence that he suffered substantive harms that resulted from the November UJC hearing including his apparent inability to register for classes and his understandable anxiety about his being "expelled," whether technically true or not, as well as his anxiety and frustration over not being able to participate in the November hearing. And in any event, Smith can still recover nominal damages absent proof of actual injury. *See Carey,* 435 U.S. at 266, 98 S.Ct. 1042; *Burt v. Abel,* 585 F.2d 613, 616 (4th Cir.1978).

■ Smith also contends that the University's conduct as it relates to the November UJC hearing created a poisoned environment that included his fellow students thinking that he had been "expelled" despite his continuing enrollment at the school, a series of negative newspaper articles urging his "re-expulsion" in the campus newspaper, *The Cavalier Daily,* leaflets distributed on-grounds advocating his lynching, and a web-site that was dedicated to counting the number of days since his November 1998 "expulsion." While this Court does not question the fact that Smith's experiences at the University following the November UJC hearing may have been quite unpleasant, he has failed to come forward with evidence establishing an affirmative link between the defendants' actions at or relating to the November UJC hearing and the poisoned environment. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Barrow v. Bounds,* 498 F.2d 1397 (4th Cir.1974). *The Cavalier Daily* is an independent student newspaper which does not represent the opinions of the University. And all rallies held, web-sites created, and leaflets distributed, while surely upsetting to the plaintiff, were simply an exercise of the University students' First Amendment rights, and are in no

way chargeable to the defendants. Therefore, defendants' motion for summary judgment will be granted as it pertains the plaintiff's "poisoned environment" claim.

### 2. Counts Two and Five—Failure to Instruct, Train, Supervise, and Control

In Counts Two and Five, plaintiff alleges that Casteen, Harmon, and the individual BOV members failed to properly instruct, train, and supervise the UJC defendants and that Casteen and the individual BOV members failed to properly instruct, train, and supervise Harmon with respect to the November UJC hearing. Plaintiff seeks both damages and injunctive relief under section 1983.

■ Supervisory liability claims "cannot attach if a defendant merely failed to act or prevent a constitutional deprivation." *Cobb*, 69 F.Supp.2d at 835, n. 21, *citing Rizzo*, 423 U.S. at 377, 96 S.Ct. 598. The Fourth Circuit has set forth the elements of a supervisory liability claim under section 1983:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a persuasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994), *citing Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990); *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir.1984); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir.1983). Thus, supervisory liability claims are not premised upon respondeat superior liability, but instead upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* at 798, *quoting Slakan*, 737 F.2d at 372–73; *see also Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir.1981) (supervisory liability under section 1983 can exist if "policies or customs actually caused [plaintiff's] injuries," which can be established by omissions as well as affirmative acts).

In support of his supervisory liability claim involving the UJC defendants, Smith points to the deposition testimony of Casteen in which the University President testified that he learns of allegations of due process violations in "student-run disciplinary committees" two to four times per year. In addition, in an open letter to the University regarding the Honor Committee case of Christopher Leggett, Casteen noted that "the proceeding against Mr. Leggett involved a clear denial of due process" and that the students involved "were not competent to run the process they were in." While the Court recognizes that the UJC and Honor Committee operate under different procedures, there are sufficient enough similarities between the two student-run committees such that existence of problems within one committee should put the University on notice that similar problems likely exist within the other.

■ Smith has put forth sufficient evidence to create genuine issues with regard to defendants' knowledge of problems with the UJC, defendants' policy of indifference toward those problems, and the causal connection between the defendants' failure to train the UJC properly and the injuries that he suffered. Thus, the motion for summary judgment as to Count Two on the issue of supervisory liability leading to violations of procedural due process is denied.

■ As to Count Five, the supervisory claim involving Harmon, plaintiff has failed to produce any evidence that Casteen or the individual BOV members possessed actual or constructive knowledge of any conduct by Harmon that posed "a persuasive and unreasonable risk" of constitutional

injury to students like Smith. *See Stroud,* 13 F.3d at 799. While plaintiff, in detail, chronicled alleged complaints lodged against the University's student-run honor committees, he produced no such complaints implicating Harmon. Having failed to come forward with evidence necessary to satisfy this element of a supervisory liability claim, defendants' motion for summary judgment as to Count Five is granted.

### 3. Count Six—Conspiracy Claim

 To make a conspiracy claim under section 1983, a plaintiff must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir.1996), *citing Hafner v. Brown,* 983 F.2d 570, 577 (4th Cir.1992). Even acquiescence can amount to a conspiracy agreement. *See Hafner,* 983 F.2d at 578.

Smith has a weighty burden to establish a civil rights conspiracy. *See Hinkle,* 81 F.3d at 421. Plaintiff must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial motives. *See Hafner,* 983 F.2d at 576–77. To survive a properly supported motion for summary judgment, plaintiff's evidence must reasonably lead to the inference that defendants came to a mutual understanding in an attempt to accomplish a common and unlawful plan. *See Hinkle,* 81 F.3d at 421.

Plaintiff's evidence fails in this regard. Smith did not produce any evidence, either direct or circumstantial, that defendants acted in concert to deprive him of due process. His evidence is "nothing more than rank speculation and conjecture," and is insufficient to survive summary judgment. *Id.* at 422.

### CONCLUSION

Defendants' motion for summary judgment as to Count One is GRANTED, but only as to plaintiff's "poisoned environment" claim; defendants' motion for summary judgment on the remainder of Count One is DENIED. Summary judgment is DENIED on Count Two. Defendants' motion for summary judgment on Counts Five and Six is GRANTED.