Harrison Kerr **TIGRETT**, Plaintiff,

v.

The **RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA**, et al., Defendants.

**Bradley Clark Kintz, Plaintiff,**

v.

**The Rector and Visitors of the University of Virginia, et al., Defendants.**

Nos. CIV. A. 3:99CV100094, CIV. A. 3:00CV00031.

United States District Court, W.D. Virginia, Charlottesville Division.

March 1, 2001.

Frank L. Watson, Jr., Frank L. Watson, III, Michael Fitzgerald, Baker, Donelson, Bearman & Caldwell, Memphis, TN, C. James Summers, Charlottesville, VA, for Harrison Kerr Tigrett, plaintiff.

Stephen Neal, Manatt, Phelps & Phillips, Washington, DC, for Bradley Clark Kintz, plaintiff.

Richard C. Cast, Susan M. Davis, Patrick B. Kelly, Associates General Counsel, Special Assistants Atty. General, Office of General Counsel of Univ. of Virginia, for defendants.

## MEMORANDUM OPINION

MOON, District Judge.

This matter is before the Court on Defendants' Supplemental Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs Harrison Kerr Tigrett and Bradley Clark Kintz, former students at the University of Virginia ("University"), brought separate actions against the Rector and Visitors of the University of Virginia, University President John T. Casteen, III, University Vice President William W. Harmon, individual members of the University's Board of Visitors ("BOV"),[1] individual members of a University Fact–Finding Panel,[2] and individual members of the University's Judiciary Committee ("UJC").[3] By Order of this Court of August 30, 2000, these two matters were consolidated for purposes of discovery and trial.

Pursuant to this Court's previous ruling in *Tigrett v. Rector and Visitors of the Univ. of Va.*, 97 F.Supp.2d 752 (W.D.Va. 2000), and the Stipulation and Order of July 13, 2000, making the findings in *Tigrett*, and the earlier rulings in the related case of *Smith v. Rector and Visitors of the Univ. of Va.*, 78 F.Supp.2d 533 (W.D.Va. 1999) ("*Smith I*"); 115 F.Supp.2d 680 (W.D.Va.2000) ("*Smith II* "), binding in the *Kintz* case, the only claims remaining before this Court are Plaintiffs' allegations that they were: (1) denied procedural due process when the November UJC hearing panel tried them *in absentia* and recommended that they be expelled; (2) denied procedural due process due to inadequate notice that they would be charged with violating Section 8 of the University's Standards of Conduct; (3) denied due process by Casteen, Harmon, and members of the BOV by their failure to instruct, train, supervise, and control the November UJC hearing panel in the performance of their duties; (4) denied due process by Casteen and individual members of the BOV by

---

1. The named members of the Board of Visitors are John P. Ackerly, III, Charles M. Caravati, Jr., Champ Clark, William G. Crutchfield, Jr., William H. Goodwin, Jr., T. Keister Greer, Elsie Goodwyn Holland, Timothy B. Robertson, Terence P. Ross, Albert H. Small, Elizabeth A. Twohy, Henry L. Valentine, II, Walter F. Walker, Benjamin P.A. Warthen, James C. Wheat, III, and Joseph E. Wolfe.

2. The named members of the Fact Finding Panel are Karen Holt, Tillman Breckenridge, Sylvia Terry, Charles Tolbert, and Shamin Sisson.

3. The named UJC members are John Hevner, Matthew O'Malley, Steve Saunders, Mark Kringlen, Alton Powell Clark, Priya Kumar, and Emily Halayko.

their failure to instruct, train, supervise, and control Harmon; (5) damaged by individual members of the UJC hearing panel who conspired to deprive them of their civil rights; and (6) damaged by Casteen and Harmon who conspired to deprive them of their civil rights. Plaintiff Tigrett's breach of contract claim, seeking prospective injunctive relief, and Plaintiff Kintz's substantive due process claim also remain.

## FACTS

This Court's earlier Opinion summarized the essential factual background of Tigrett's claims in detail. *See Tigrett,* 97 F.Supp.2d at 753–56. The facts of *Tigrett* are quite similar to those described in *Smith I* and *Smith II*. And in light of the Stipulation and Order of July 13, 2000, the same similarity necessarily exists between *Kintz* and *Smith*. Given the rather exhaustive recitation of the underlying facts in these earlier opinions, the Court will now briefly summarize only those facts bearing particular relevance to current motions.

In the early morning hours of November 21, 1997, Tigrett, Kintz, and fellow fraternity brothers and University students Richard Smith, Wes McCluney and Wes Kaupinen, went for a drive. They encountered Alexander Kory, another University student who was on foot. Kory and one or more of the car's occupants engaged in a verbal exchange. Events escalated to the point where Kintz and Tigrett exited the car to confront Kory. Smith then exited the car and attempted to calm the situation by telling Kory to go home and Kintz and Tigrett to go back to the car. Kory then directed some profanity toward Smith and, in a burst of anger, Smith punched

Kory in the face, causing him extensive injuries to the face, jaw, and teeth.

On December 3, 1997, Kory initiated student disciplinary charges against Tigrett, Kintz, Smith, and McCluney pursuant to the procedures of the UJC. Initially, Tigrett and Kintz were charged with violating Sections 1 and 5 of the University's Standards of Conduct. Section 1 prohibits:

Physical or sexual assault of any person on University—owned or leased property or at University—sponsored or supervised functions, or conduct which threatens the health or safety of any such person or the physical or sexual assault of any University student, faculty member, or employee at the local residence of any student, faculty member or employee within the City of Charlottesville or Albemarle County.

Section 5 prohibits:

Unlawfully blocking or impeding normal pedestrian or vehicular traffic on or adjacent to University property.

A UJC hearing for Smith, Kintz and Tigrett was initially scheduled for February, 1998, but was postponed until after the disposition of pending criminal charges arising from the incident.[4] Tigrett and Kintz pled *nolo contendere* to the charge of disorderly conduct in Albemarle County General District Court. The UJC hearing was rescheduled for November 21, 1998.

The day before the rescheduled hearing was to take place, Smith, Smith's father, Tigrett, and Tigrett's student counsel attended a meeting with Harmon. During the course of the meeting, Tigrett and Kintz allege that Harmon agreed to postpone the hearing after conferring with the University's general counsel.

---

4. Because McCluney was scheduled to graduate the following May, Vice President for Student Affairs William Harmon determined that he would not be subjected to a UJC trial and instead reprimanded him and required him to attend counseling.

Meanwhile, the UJC held its hearing on November 21 despite the absence of Kintz, Tigrett, and Smith. The UJC panel found the three guilty of violating Sections 1, 5, and 8 of the University's Standards of Conduct and ordered their expulsion from the University. Specifically, Section 8 prohibits:

Disorderly conduct on University—owned or leased property or at a University sponsored function. Disorderly conduct is defined to include acts which break the peace or are lewd, indecent or obscene and which are not constitutionally—protected speech.

Kory did not initially seek to charge Tigrett and Kintz with "disorderly conduct" under the University's Standards of Conduct.

On review, Harmon referred the UJC panel's decision to the University's Judicial Review Board ("JRB"), which is charged with hearing certain appeals of UJC decisions. On February 11, 1999, the JRB set aside the UJC panel's decision and remanded the matter for a new hearing. Pursuant to the remand, the UJC named a new hearing panel and scheduled a new hearing for April 17, 1999. However, that hearing was canceled when the UJC chairperson recused herself. Subsequently, the UJC determined that it was unable to hear the case in a timely manner and referred it to Harmon, who then appointed a hearing panel consisting of student, faculty and administration representatives to hear the case and to make a recommendation to Casteen. This panel convened a hearing on May 17, 1999, at which Tigrett and Kintz appeared, witnesses were called, evidence was presented, and factual findings were made. The panel found Tigrett and Kintz guilty of violating sections 1 and 8, and recommended that they be suspended for one semester (not to include a summer session) and that they perform seventy-five hours of community service. The panel then forwarded its recommendations to Casteen.

Casteen reviewed the panel's report and recommendations and affirmed the findings of guilt reached by the panel. However, he modified Tigrett's recommended sanction by imposing a suspension for one full academic year (not to include a summer session), with expulsion in abeyance pending any further violation of the University's Standards of Conduct while a student of the University. Casteen did not modify the suspension of one academic semester for Kintz. Tigrett appealed his sanction to the JRB, which upheld it. Kintz, through counsel, notified Casteen that he would not appeal the decision to the JRB. These suits followed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir.1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994).

## III. ANALYSIS

### 1. *Whether the UJC denied Plaintiffs of due process by trying them in absentia*

In the context of student discipline, the Due Process Clause requires

"notice and an opportunity to be heard." *See Dixon v. Alabama State Bd. of Educ.,* 294 F.2d 150 (5th Cir.1961); *Gorman v. University of Rhode Island,* 837 F.2d 7, 12 (1st Cir.1988); *Carey v. Maine Sch. Admin. Dist. No. 17,* 754 F.Supp. 906, 918 (D.Me.1990); *Reilly v. Daly,* 666 N.E.2d 439, 444 (Ind.Ct.App.1996). It is no longer open to question that any expulsion from a state university or college must comport with the Due Process Clause of the Fourteenth Amendment. *See Goss v. Lopez,* 419 U.S. 565, 576, n. 8, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ In analyzing a due process claim, a court must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty or property." *See Ingraham v. Wright,* 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Board of Regents v. Roth,* 408 U.S. 564, 569–572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If so, the court must then determine what process is due. *See id.*

Here, the Court will assume that Tigrett and Kintz had a protected property interest in their continued enrollment at the University. *See Smith II,* 115 F.Supp.2d at 684; *Henson v. Honor Committee of Univ. of Va.,* 719 F.2d 69, 73 (4th Cir. 1983); *Cobb v. The Rector and Visitors of the Univ. of Va.,* 69 F.Supp.2d 815, 826 (W.D.Va.1999); *Lewin v. Medical College of Hampton Roads,* 910 F.Supp. 1161, 1164 (E.D.Va.1996), *aff'd,* 120 F.3d 261 (4th Cir. 1997). It is also assumed that Plaintiffs possessed a liberty interest in their reputations. *See Smith II,* 115 F.Supp.2d at 684; *Goss,* 419 U.S. at 576, 95 S.Ct. 729.

In *Smith II,* this Court continued its analysis by stating, "[t]he question remains, however, not whether plaintiff was actually deprived of a property or liberty interest, but rather whether plaintiff reasonably believed that such a deprivation had occurred." *Smith II,* 115 F.Supp.2d at 684 (citing *Sundbye v. Ogunleye,* 3 F.Supp.2d 254, 264 (E.D.N.Y.1998)). Based upon this "reasonable belief" standard, this Court went on to find that "Smith may have fostered the objectively reasonable," yet false "belief that the expulsion decision was effective immediately." *Id.* In so deciding, this Court concluded that while Smith suffered no actual deprivation because he was never actually expelled, his reasonable belief that such a deprivation occurred was sufficient to survive summary judgment.

In the present case, Plaintiffs do not rely upon, and in fact disavow, the *Sundbye* "reasonable belief" standard.[5] Instead, they argue that they were actually expelled at the November UJC hearing, and suffered adverse consequences as a result. To support this contention, they point to: (1) letters received by the Plaintiffs from UJC Defendant John Hevner, dated November 21, 1998, that they had been sanctioned with "[e]xpulsion without any condition that will allow for readmission," (2) letters to the University Registrar from UJC Defendant Priya Kumar, dated November 24, 1998, advising her to write "enrollment discontinued" on the transcripts of Tigrett and Kintz and that "[t]he effective date of dismissal should be November 21, 1998," (3) a letter from Hevner to Harmon, dated November 23, 1998, stating that the UJC had voted to expel Plaintiffs; (4) the testimony of select UJC

---

**5.** Because Plaintiffs place no reliance on the *Sundbye* "reasonable belief" standard, this Court need not reconsider its decision in *Smith II* to utilize the standard. While not at issue in the present case, it is worth noting that the Court has had second thoughts regarding its use of the "reasonable belief" standard in the *Smith II.*

Defendants as to their belief that the sanction was effective immediately, and (5) the testimony of Gordon Burris, Special Assistant to Casteen, that a block "at one point" was placed on Tigrett's transcript which prevented him from registering for classes. Plaintiffs' argument is wholly dependent on this Court reaching the conclusion that Tigrett and Kintz were actually expelled on November 21, 1998.

Plaintiffs' argument flies in the face of and completely ignores this Court's earlier finding in *Smith II*. In that case, under the very same facts, this Court found that Smith's belief that his expulsion was effective immediately was a "false belief" because the UJC procedures specifically provide for Harmon's automatic review of all UJC decisions. *See id.* The then Registrar, Ann Antrobus, has testified that she never acted on the Hevner letter. Rather, upon receipt of the letter, she contacted Harmon who instructed her not to act on the letter for he had already referred the case to the JRB. Antrobus then wrote "Not Processed. Awaiting Further Action." on the letters. Further, Plaintiffs were never in anyway barred from attending classes at the University. In fact, Plaintiffs' readily admit that they sat for all of their final examinations administered in December, 1998, a month after the alleged expulsion. While there may have been some confusion among the UJC Defendants as to the finality of their decision, the University took no action based on the November UJC panel's decision to expel the Plaintiffs.

Plaintiffs have failed to come forward with sufficient new evidence to make this Court stray from its finding in *Smith II* that the UJC's expulsion decision was merely a recommendation, and therefore did not take immediate effect. Without the benefit of the *Sundbye* "reasonable belief" standard, which Plaintiffs have chosen to renounce, Plaintiffs cannot survive

summary judgement for there can be no actual deprivation arising from an expulsion that never was.

Assuming *arguendo* that the expulsion decision did take immediate effect, Plaintiffs have alleged to have suffered two deprivations as a result of the November UJC panel's decision: (1) the inability to register for classes (property interest); and (2) damage to their reputation (liberty interest). The Court must first determine whether the Due Process Clause is applicable to a student's inability to register.

In determining "whether due process requirements apply in the first place, we must look not to the weight but to the nature of the interest at stake." *Roth*, 408 U.S. at 570–71, 92 S.Ct. 2701 (internal quotations and citations omitted). The Supreme Court's view "has been that as long as a property deprivation is not de minimis, its gravity is irrelevant to the question of whether account must be taken of the Due Process Clause." *Goss*, 419 U.S. at 576, 95 S.Ct. 729 (citations omitted). It is the opinion of this Court that the inability to register for classes, standing alone, is de minimis. To conclude otherwise would enable all students with a Registrar's block, even when attributable to an unpaid parking ticket or an outstanding balance with the student bookstore, to allege a constitutional injury.

▮ As to the alleged damage to their reputations, "injury to reputation by itself [is] not a liberty interest protected the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (citing *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Defamation, by itself, is a tort actionable under state law, but not a constitutional deprivation. *Id.* Without damage to a tangible interest, publication of stigmatizing charges alone does not invoke the Due Process Clause.

*See Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir.1990) (citing *Paul*, 424 U.S. at 701, 96 S.Ct. 1155). Thus, because Plaintiffs suffered no more than a de minimis property deprivation, there were no liberty interests implicated.

For these reasons, Defendant's Motion for Summary Judgment as to Plaintiffs' procedural due process claim stemming from their trial *in absentia* claim is hereby granted, and Plaintiffs' Motion for Partial Summary Judgment with respect to this claim is therefore denied.

## 2. Whether Plaintiffs were denied due process due to inadequate notice that they would be charged with violating Section 8 of the University's Standards of Conduct

Tigrett and Kintz next allege that their due process rights were violated when the University failed to notify them that they were being charged with violating Section 8 of the University's Standards of Conduct. The basis for Plaintiffs' claim is that Kory's initial UJC complaint did not include a Section 8 disorderly conduct charge. UJC procedures require that a student be provided with written notification of the charges being brought against them. Plaintiffs never received such written notice of the Section 8 charge.

The proper inquiry is whether Plaintiffs had a meaningful basis for believing they would be charged with disorderly conduct. As this Court previously warned, a mere showing by Plaintiffs that the University failed to inform them that they were violating Section 8 *per se* will be insufficient to withstand summary judgment. *See Tigrett*, 97 F.Supp.2d at 759 (citing *L.Q.A. By and Through Arrington v. Eberhart*, 920 F.Supp. 1208, 1219 (M.D.Ala.1996) (a failure to designate a particular code violation by letter or number does not violate the plaintiff's due process where plaintiff was informed of basis for expulsion)).

Since the basis of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to survive summary judgment, Plaintiffs need to show that the University provided them with no meaningful basis for believing that they would be charged with disorderly conduct under the University's Standards of Conduct. *See Tigrett*, 97 F.Supp.2d at 759. This required showing needs to be made regardless of any procedural (but non-constitutionally based) safeguards the University's rules may provide. *See id.*

Plaintiffs need to do more than merely demonstrate that the University violated its own procedures or rules by amending Kory's complaint or by allowing a Section 8 charge to be leveled more than 45 days after the incident, since "a violation of state law (for purposes of this case the student judicial code may be treated as a state law) is not a denial of due process, even if the state law confers a procedural right." *Id.* (quoting *Osteen v. Henley*, 13 F.3d 221, 224 (7th Cir.1993)). As stated by the Fourth Circuit:

It is axiomatic, as the University rightly points out, that both in this and related contexts of state action, not every departure from a state agency's stated or customary procedures constitutes a denial of constitutionally guaranteed procedural due process.... Indeed, the fundamental principle seems now established that in these cases the source of procedural guarantees is to be found solely in the due process clause rather than in any specific procedures provided by the state.

*Jones v. Board of Gov'rs, Univ. of N.C.*, 704 F.2d 713, 716–17 (4th Cir.1983) (citations omitted).

While this Court and the Fourth Circuit have recognized that "deviating from an

agency's established procedural guidelines in a disciplinary action is not necessarily a violation of constitutional rights," *Cobb,* 69 F.Supp.2d at 828 (citing *Jones,* 704 F.2d at 717), it remains the law in this Circuit that "significant departures from stated procedures of government and even from isolated assurances by government officers which have induced reasonable and detrimental reliance may, if sufficiently unfair and prejudicial, constitute procedural due process violations." *See Jones,* 704 F.2d at 717 (citing *United States v. Caceres,* 440 U.S. 741, 752–53 & n. 15, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)).

Here, there was nothing unfair about charging Plaintiffs with violating Section 8 more than 45 days after the incident. According to the testimony of Dustin Burke, the Investigator's Report provided Plaintiffs with notice that they were being charged with violating Section 8, at a minimum, 48 hours before the November hearing.[6] Further, Plaintiffs reviewed multiple drafts of the report, listing the Section 8 charge, before the report was finalized 48 to 72 hours before the November hearing. In the context of student discipline, the Supreme Court has stated with respect to short suspension cases that "[t]here need be no delay between the time notice is given and the time of the hearing." *Goss,* 419 U.S. at 582, 95 S.Ct. 729. While the present case is admittedly one involving a more serious penalty, the Court is of the belief that 48 hours provided Plaintiffs with sufficient notice of the Section 8 charge, especially in light of the fact that the challenged disorderly conduct charge was wholly subsumed within the assault charge brought under Section 1. If Plaintiffs were prepared to defend against the Section 1 charge, they necessarily were ready to face what in essence was a lesser included offense of disorderly conduct.

Because the Investigator's Report provided Plaintiffs with constitutionally-required notice that they would face Section 8 charges, in spite of any deviations from UJC's procedures, Defendant's Motion for Summary Judgment as to the Section 8 claim is hereby granted, and Plaintiffs' Motion for Partial Summary Judgment with respect to this claim is therefore denied.

### 3. Whether Plaintiff Kintz was denied substantive due process

Whether the problem is the denial of fundamental procedural fairness or the exercise of governmental power without any reasonable justification, the touchstone of due process is "protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). "To establish a violation of substantive due process, a student must demonstrate arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision or must show that the dismissal was motivated by bad faith or ill will unrelated to academic performance." *Cobb,* 69 F.Supp.2d at 826 (citations omitted). A plaintiff must demonstrate some "egregious official conduct" which constitutes "an abuse of power that shocks the conscience." *Dunn v. Fairfield Community High Sch. Dist. No. 225,* 158 F.3d 962, 965 (7th Cir.1998).

Here, Plaintiff Kintz argues that his expulsion meets this standard. This argument must fail for this Court has already concluded that Kintz was never expelled. Because the challenged sanction was never imposed, Kintz substantive due process claim cannot proceed. Even assuming that Plaintiff was actually expelled, the

---

**6.** At oral argument on the present motion, counsel for the Plaintiffs stated that they were pursuing the Section 8 claim only in relation to the November UJC hearing.

evidence is insufficient to show the conduct of any University official rose to a level which shocks the conscience of the Court. For these reasons, Defendant's Motion for Summary Judgment as to Plaintiff Kintz's substantive due process claim is hereby granted.

4. *Whether Casteen, Harmon, and the members of the BOV failed to instruct, train, supervise, and control the November UJC hearing panel, whether the members of the BOV failed to instruct, train, supervise, and control Casteen, and whether Casteen and the members of the BOV failed to instruct, train, supervise, and control Harmon*

■ Supervisory liability claims "cannot attach if a defendant merely failed to act or prevent a constitutional deprivation." *Cobb,* 69 F.Supp.2d at 835, n. 21. The Fourth Circuit has set forth the elements of a supervisory liability claim under section 1983:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a persuasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction

and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994) (citing *Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir.1990)); *see also Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir.1984); *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983). Thus, supervisory liability claims are not premised upon *respondeat superior* liability, but instead upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Shaw,* 13 F.3d at 798 (quoting *Slakan,* 737 F.2d at 372–73); *see also Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir.1981) (supervisory liability under section 1983 can exist if "policies or customs actually caused [plaintiff's] injuries," which can be established by omissions as well as affirmative acts).

Plaintiffs cannot satisfy prong three of the supervisory liability test for the Court has already determined that Plaintiffs suffered no actual constitutional deprivation. Assuming *arguendo* that such an injury occurred, Plaintiffs have offered no evidence of alleged due process violations specifically within the UJC.[7] Without such evidence, Plaintiffs cannot establish that the supervisory Defendants had actual or constructive knowledge of any persuasive and unreasonable risk of constitutional in-

7. In *Smith II,* the Court denied Defendants' motion for summary judgment, finding that there were "sufficient enough similarities" between the UJC and Honor Committee "such that existence of problems within one committee should put the University on notice that similar problems likely exist within the other." 115 F.Supp.2d at 687. When the evidence at trial was completed, the Court granted Defendants' motion for a directed verdict because the evidence was insufficient to support the supervisory claim, except as to

Harmon. Here, the Defendants have not furnished the evidence that was in *Smith,* but Plaintiffs' counsel at oral argument on the present motion conceded that Plaintiffs' evidence would be no stronger than the supervisory evidence in *Smith.* Further, the Court is now of the belief that the unfettered single sanction power of the Honor Committee versus the recommended sanction power of the UJC renders the two committees qualitatively different and not ripe for comparison.

jury to students appearing before the UJC.

Because Plaintiffs cannot meet element three of a supervisory liability claim under section 1983, Defendants' Motion for Summary Judgment as to Plaintiffs' claims of supervisory liability is hereby granted.

### 5. Whether individual members of the UJC hearing panel conspired to deprive Plaintiffs of their civil right and whether Casteen and Harmon conspired to deprive Plaintiffs of their civil rights

■ To make a conspiracy claim under section 1983, a plaintiff must show: (1) an actual violation of a right protected under section 1983; and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994); *see also Dooley v. Reiss*, 736 F.2d 1392, 1395 (9th Cir.1984). Plaintiffs must show that the Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the Plaintiffs'] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996), *citing Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir.1992).

■ Plaintiffs have a weighty burden to establish a civil rights conspiracy. *Smith II*, 115 F.Supp.2d at 688. They must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial motives. *See id.; Hafner*, 983 F.2d at 576–77. To survive a properly supported motion for summary judgment, Plaintiffs' evidence must reasonably lead to the inference that Defendants came to a mutual understanding in an attempt to accomplish a common and unlawful plan. *See id.; Hinkle*, 81 F.3d at 421.

Here, because the Court has concluded the Plaintiffs suffered no actual deprivation of a liberty or property interest, Plaintiffs' conspiracy claims cannot survive summary judgment. Defendants' motion as to these claims will therefore be granted.

### 6. Whether the BOV breached its contract with Plaintiff Tigrett

In Count Nine of his complaint, Plaintiff Tigrett claims that the BOV breached its contract with him by not assuring that the procedures set forth in the UJC Constitution and Bylaws and the JRB's appeal procedures were observed. As previously noted by this Court, the Eleventh Amendment bars Plaintiff's breach of contract claims, except to the extent he seeks prospective injunctive relief. *See Tigrett*, 97 F.Supp.2d at 757 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

28 U.S.C. § 1367 provides that courts "may decline" to exercise supplemental jurisdiction in certain circumstances. 28 U.S.C. § 1367(c). In particular, a court has discretion to dismiss or keep a case when it "has dismissed all claims over which it has original jurisdiction." *Id.* at 1367(c)(3); *see Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995). In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 726, 86 S.Ct. 1130. In light of such interests, the Court explicitly stated that "if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Id.*

■ Having dismissed all of Plaintiffs's federal claims, and in heeding the warning of *Gibbs*, this Court declines to exercise

supplemental jurisdiction over Plaintiff Tigrett's state law contract claim, and that claim is therefore dismissed.

## CONCLUSION

For the above-stated reasons, Defendants' Supplemental Motion for Summary Judgment is hereby granted, and Plaintiffs' Partial Motion for Summary Judgment is necessarily denied. Further, Count Nine of Plaintiff Tigrett's complaint is dismissed.